BROOKSIDE CONSTRUCTION COMPANY, INC. *v.*
F. D. RICH COMPANY, INC., ET AL.

SUPERIOR COURT          TOLLAND COUNTY          FILE No. 5953

304

Memorandum filed July 17, 1953.

*Edward H. Smith,* of Hartford, for the Plaintiff.

*Moore & Epifanio,* of Stamford, for the Defendants.

MOLLOY, J. On May 16, 1949, the defendant F. D. Rich Company, Inc., entered into a contract with the state of Connecticut for the erection of certain buildings on a project known as "Faculty Housing, University of Connecticut, Storrs, Connecticut." The defendant Rich, Inc., supplied the state of Connecticut with the mandatory labor and material bond required by statute, which provided for the payment for all materials furnished and labor supplied or performed by a subcontractor on said project, which, if not paid, would be paid by the defendant Rich, Inc., as principal, or by the defendant The American Surety Company of New York, its surety.

On or about June 1, 1949, Rich, Inc., subcontracted a portion of the work to be done under its contract to one Alfred B. Barry, doing business as Barry Construction Company, Inc. Thereafter the plaintiff, Brookside Construction Company, Inc., furnished labor, materials and equipment to the said Barry in the performance of his subcontract with said defendant Rich, Inc., from June 16 or 23, 1949, to September 30, 1949. During the performance of the contract, Barry became involved financially, leaving a balance remaining in the amount of $2028.17 due to the plaintiff, which fully completed its work.

The plaintiff now seeks to recover of the defendants and in its action proceeds under General Statutes, §§ 7214, 7215. The first section provides for the execution of a bond with surety for the protection of employees and materialmen in the performance of any construction contract with the state of Connecticut; the latter section provides for the right to sue on such payment bond for any unpaid balance, "provided any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing such payment bond shall have a right of action upon such payment bond upon giving written notice to such contractor within sixty days from the date on which such person performed the last of the labor or furnished or supplied the last of the material for which such claim is made. . . ." In other words, § 7215 requires a sixty-day notice to the contractor by the person having no contractual relationship express or implied with that contractor.

The defendants claim, and it is conceded, that the plaintiff did not give the statutory notice, the latter contending that this was not necessary inasmuch as it had established a contractual relationship with the contractor, defendant company, which did away with the necessity of a notice. The defendants also contend that any such contractual relationship as claimed by the plaintiff was purely a collateral undertaking and thus within the Statute of Frauds and therefore of no effect.

In *New Britain Lumber Co.* v. *American Surety Co.,* 113 Conn. 1, 7, it is said, "The filing of a statement of claim within sixty days is thus made a condition precedent to recover from the municipality. 'The general rule is that where a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced, the

time fixed is a limitation or condition attached to the right—it is a limitation of the liability itself as created, and not the remedy alone.' . . . The statute prescribes a specific course of conduct and a material-man is protected only if he follows such course." In *Pelton & King, Inc.* v. *Bethlehem,* 109 Conn. 547, 556, it is stated that "It is clear that the primary purpose of the statute is to protect and benefit those who furnish materials and labor to the contractor on public work, in that they may be assured of payment of their just claims, without defeat or undue delay."

With this thought in mind it is of interest to refer to some federal cases interpreting the Miller Act (49 Stat. 793, 40 U.S.C. § 270a), which is the federal bonding statute protecting labor and materialmen on the erection of public structures. It requires a ninety-day notice and is modeled in this respect upon our own statute. In these cases it is laid down as the law that the statutory notice is a condition precedent to action on a payment bond by one having no contractual relationship express or implied with the contractor, but if there is an express or implied contractual relationship with the contractor the notice is not essential to recovery. In the headnote for *United States ex rel. Hargis* v. *Maryland Casualty Co.,* 64 F. Sup. 522, it is said, " 'Implied contracts' are such as arise by legal inference and upon principles of reason and justice from certain facts, or where there is circumstantial evidence showing that the parties intended to make a contract," or where he can claim a contract by implication. In other words, there is no lessening of the necessity for a notice as a condition precedent except when the parties by their acts and conduct enter into an express or implied contract to insure the payment of the obligations due the materialmen or those dealing with the subcontractor. This is in keeping with the primary purpose of the statute as emphasized in the *Pelton* case, supra.

This being so, we come back to the question of what was the factual situation in this case between Sawka for the plaintiff and Rich for the Rich Company concerning Sawka's getting his money. The plaintiff's work for Barry started about the middle of June, 1949, and about September 1, 1949, Sawka says he contacted Frank Rich, president of the Rich Company, for the first time about getting some money from Barry. On September 16, 1949, he was paid $3,000 by Barry. Of this sum, he credited Barry with $1,654.10 on the Rich job, applying the balance to some other work the plaintiff had done for Barry. On September 24, Sawka received another $3,000 from Barry. On November 7, 1949, a payment of $3,500 was made by Barry. A few days prior thereto Sawka claims he again talked with Frank Rich; at that time plaintiff was owed over $14,000. On December 10, 1949, he received $5,000 from Barry and then $2,000 on January 3 and $2,000 on March 13, 1950. The job was completed by the plaintiff on September 30, 1949. Both talks and the one about May 1, 1950, were by telephone with Frank Rich, although Mr. Rich denies any such calls or talks with Sawka. On May 15, 1950, the plaintiff filed with the Rich Company an affidavit setting out the balance due it as $2,028.16. At no time prior to the completion of its work for Barry did Sawka tell Mr. Rich how much Barry owed him.

In these telephone calls Sawka says Mr. Rich told him not to worry, that he would be paid out of retainage; that is out of the 10 per cent withheld by the Rich Company on its payments to Barry, and to go ahead with the work. The court certainly cannot find an express agreement, not even an implied agreement, by the Rich Company, that it would guarantee the payment of any balance owed to plaintiff by Barry or that it would "protect and retain the monies due the plaintiff." The work was completed over a month when the second conversation took place and over five

months when the third conversation took place. To find that contractual obligations and relationships had been established by the conversations held is asking for the filling of a big order. There is no direct or unequivocal promise to pay. He was, as Sawka says, to be paid out of retainage. Beyond telephone calls, which are denied, no attempt was made by bills or otherwise to commit the Rich Company to the payment of any balance due the plaintiff. While the court concludes that telephone talks took place with Rich, it cannot believe that contractual relationship for the payment of Barry's obligations to the plaintiff resulted.

The plaintiff received all but $682.27 of its $19,182.27 claim against Barry. The plaintiff had no right, as far as the Rich Company was concerned, to apply $1345.90 of the first $3000 payment to another job it had done for Barry and now seek to hold the Rich Company for that amount also. The positions are inconsistent.

The issues are found and judgment is directed for the defendants.