[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #131
The plaintiff, Connecticut Electric Equipment Co., Inc., filed a five count second substituted complaint on September 6, 2001, against the defendants, Schiavi Leasing COT. (Schiavi), Vanguard Modular Building Systems, LLC (Vanguard), Carp Building Structures, Inc. (Carp), Triple L Electric Co., Inc. (Triple L) and U.S. Fidelity Guaranty Co. (Fidelity). Vanguard, the parent contractor, and Schiavi, the subsidiary contractor, merged in 1998. They contracted with Carp, the first tier subcontractor, to provide materials and services for a South Windsor Public School System project. Fidelity issued a payment bond pursuant to General Statutes § 49-41 et seq. ("little Miller Act") for the labor and materials to be supplied for the project. Carp contracted with Triple L, a second tier subcontractor, who then proceeded to contract with the plaintiff. Carp, Triple L and the plaintiff entered into a joint payment agreement in which Carp would issue a joint check, payable to both Triple L and the plaintiff, for services and materials rendered.
Counts one and five are brought against Schiavi, Vanguard, Carp and Triple L for breach of contact and unjust enrichment, respectively. The plaintiff alleges that it supplied electrical materials and services per agreement and the defendants have refused to pay. Counts two, three and four are brought against Fidelity, Schiavi and Vanguard for recovery under the § 49-41 payment bond for materials and services rendered, and under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b et seq., for denial of the plaintiffs pre-suit claim under the bond and for failure to pay the sum due to the plaintiff.
Schiavi, Vanguard and Fidelity filed the motion for summary judgment presently before the court on November 2, 2001, as to all five counts. With regard to counts one and five alleging breach of contract and unjust enrichment, they argue that they never entered into any contract with the plaintiff and, furthermore, that they already paid Carp for the materials that were supplied. With regard to counts two, three and four alleging violations under § 49-41 and CUTPA, they argue that the counts are based upon the plaintiffs erroneous belief that it is entitled to recover CT Page 4060 under the payment bond issued by Fidelity. They maintain that the plaintiff is a third tier supplier and beyond the protection of the little Miller Act.
"Practice Book . . . [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Rivera v.Double A Transportation, Inc., 248 Conn. 21, 24, 727 A.2d 204 (1999).
 A Counts Two, Three and Four
Counts two and three are brought against Schiavi, Vanguard and Fidelity based on § 49-41, which requires a bond for the protection of employees and materialmen involved in construction on public projects. Fidelity issued a bond in excess of $1 million dollars for all material and services provided for the project. Count two is brought directly under § 49-41, and count three is a CUTPA claim based on the nonpayment by the defendants under the bond. Count four is a claim against Schiavi under § 49-41a (b), which requires that the plaintiff give notice to the contractor of a claim brought under § 49-41. Schiavi, Vanguard and Fidelity move for summary judgment on all three counts, claiming that the plaintiff is a third tier supplier and beyond the protection of § 49-41.
In J.W. Bateson Co. v. Board of Trustees, 434 U.S. 586, 98 S.Ct. 873,55 L.Ed.2d 50 (1978), the United States Supreme Court held that the protections of the payment bond extended no further than to sub-subcontractors. Id., 591.[1] The Supreme Court relied heavily on the legislative history of the federal Miller Act, which itself supports the concept of dividing subcontractors into tiers. "A sub-subcontractor may avail himself of the protection of the bond . . . but that is as far as the bill goes. It is not felt that more remote relationships ought to come within the purview of the bond." Id. Connecticut's little Miller Act "was patterned after federal legislation popularly known as the Miller Act; 40 U.S.C. § 270a through 270d; and, therefore, we have regularly CT Page 4061 consulted federal precedents to determine the proper scope of our statute." (Internal quotation marks omitted.) Blakeslee Arpaia Chapman,Inc. v. El Constructors. Inc., 239 Conn. 708, 716, 687 A.2d 506 (1997).
Following the United States Supreme Court's decision in J.W. BatesonCo. v. Board of Trustees, supra, 434 U.S. 586, a number of Connecticut Superior Court decisions have held that the little Miller Act extends protection only as far as the sub-subcontractor. See, FairfieldResources Management. Inc. v. Danbury, Superior Court, judicial district of Danbury, Docket No. 331619 (April 12, 2001, Adams, J.); NortheastWaste Systems. Inc. v. Connecticut Abatement Technologies. Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 419724 (May 31, 2000, Alander, J.) (27 Conn.L.Rptr. 263) (allowing recovery nevertheless on the basis that the bond coverage exceeded what was required by statute); Bleiler v. Metcalf Eddy Inc., Superior Court, judicial district of Hartford at Hartford, Docket No. 580066 (February 17, 1999, Fineberg, J.) (24 Conn.L.Rptr. 178); Summit Crane Co. v.Continental Metalcraft, Superior Court, judicial district of New Haven, Docket No. 035564 (September 26, 1996, Corradino, J.) (17 Conn.L.Rptr. 651). As a subcontractor to the sub-subcontractor Triple L, the plaintiff does not fall under the protection of the little Miller Act. FairfieldResources Management. Inc. v. Danbury, supra, Superior Court, Docket No. 331619 ("[a]s a subcontractor to a subcontractor, [the plaintiff] would not fall within the ambit of payment surety bond required under §49-41").
The plaintiff's objection to the motion for summary judgment rests on a number of arguments. First, it argues that through the joint payment agreement, it did contract directly with a subcontractor and therefore is a proper claimant under the bond. Second, it argues that even if the agreement does not create a contractual obligation with Carp, the language of the bond itself expands the number of parties protected. Lastly, the plaintiff, relying on Semco Manufacturing. Inc. v. B-GMechanical Contractors. Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 522990 (April 22, 1994,Hale, J.T.R.), argues that it falls within the class of parties which § 49-41 was intended to protect.
The plaintiff is correct in arguing that Semco Manufacturing, Inc. disregards the various tiers of subcontractors and allows every person who furnished materials or labor to recover under the bond. See SemcoManufacturing, Inc. v. B-G Mechanical Contractors, Inc., supra, Superior Court, Docket No. 522990. It is, however, the minority view. "Connecticut Superior Court decisions have, with the exception of Semco, held that parties lower on the subcontractor hierarchy than sub-subcontractor cannot prevail on the payment bond required by the Little Miller Act." FairfieldCT Page 4062Resources Management. Inc. v. Danbury, supra, Superior Court, Docket No. 331619.
The plaintiff next argues that when the language of the bond itself creates more protection than the statute, then the plaintiff is protected under the bond. "Although the surety's liability on the bond must be at least coextensive with the obligation imposed by the [Miller] Act . . . the statutory requirements establish only a floor of protection beneath which the coverage of a payment bond cannot fall, rather than an upper limit upon the scope of a bond's coverage." (Citation omitted; internal quotation marks omitted.) Blakeslee Arpaia Chapman. Inc. v. ElConstructors. Inc., supra, 239 Conn. 716-17. In Northeast Waste Systems.Inc. v. Connecticut Abatement Technologies. Inc., supra,27 Conn. L. Rptr. 263, the court focused on the language of the bond, which provided protection for "[a]ny party whether a subcontractor or otherwise, who furnishes materials or supplies or performs labor or services in the prosecution of the work under said contract. . . ." Id., 264. In the present case, the bond requires that the principal make payment to all claimants for labor and materials used in the performance of the contract. It defines claimants, however, as "one having a direct contract with the Principal or with a sub-contractor of the Principal. . . ." Based on the language of the bond, the plaintiff does not fall within this exception and would not be covered by the payment bond, unless, as the plaintiff argues, the joint payment agreement created a direct contractual relationship between the plaintiff and the subcontractor, Carp.
In U.S. for the Use and Benefit of Metal Mfg., Inc. v. Federal Ins.Co., 656 F. Sup. 1194 (D. Ariz. 1987), the United States brought an action under the Miller Act to recover for materials supplied to subcontractor's subcontractor but for which it never paid. In that case, McCarthy was the general contractor, who contracted with Mountain States, the subcontractor, who contracted with the sub-subcontractor, J.B., who then contracted with. the plaintiff, MMI. The District Court held that (1) the agreement between the subcontractor, the subcontractor's. subcontractor, and the materialman did not, as a matter of law, create the kind of direct obligation on part of subcontractor required to impose liability under the Act on the general contractor for materials supplied to the subcontractor's subcontractor; (2) the subcontractor was not an agent of the general contractor; and (3) the subcontractor's subcontractor was not a subcontractor of the general contractor. Id. The court found that "[t]he question . . . is whether the Assignment of Contract Rights and Joint Check Agreements create the kind of "direct contractual relationship' required by the Miller Act. The court finds that as a matter of law they do not. The general proposition established by the cases is that a direct contractual relationship CT Page 4063 requires that the contractor or subcontractor actually assume responsibility to pay for the materials provided by the materialman." (Emphasis added.) Id., 1197.[2]
There is no issue as to whether, in general, joint payment agreements are valid and enforceable in Connecticut. In Bradco Supply Corp. v. MPCEducational Systems, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 441201 (September 28, 2001, Jones, J.), the court allowed the plaintiff supplier recovery under a payment bond. In that case, however, the joint payment agreement was between the general contractor, the subcontractor and the plaintiff. The plaintiff was the sub-subcontractor and there was no question he was protected by the bond. That case is distinguished from the present one, however, because the plaintiff here contracted with the sub-subcontractor. See alsoGerrity Co. v. Pace Construction. Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 299440 (November 4, 1996,Grogins, J.) (18 Conn.L.Rptr. 141), aff'd, Gerrity Co. v. PaceConstruction. Inc., 47 Conn. App. 926, 715 A.2d 72 (1998) (court enforced joint payment agreement entered into by general contractor, subcontractor and plaintiff supplier). Thus, as a matter of law, the joint payment agreement is not enough to create a direct contractual relationship between the subcontractor and the plaintiff materialman. U.S. for the Useand Benefit of Metal Mfg., Inc. v. Federal Ins. Co., supra,656 F. Sup. 1197.
For the reasons discussed above, the plaintiff is not a proper claimant under § 49-41. Therefore, defendants' motion for summary judgment as to counts two, three and four is granted.
 B Count One
Count one alleges breach of contract against Schiavi, Vanguard, Carp and Triple L. Schiavi and Vanguard move for summary judgment, arguing that they were never a party to or beneficiary of the joint payment agreement executed by Carp, Triple L and the plaintiff. They further argue that Carp was not acting as an agent for them when it entered into the contract with Triple L or the payment agreement with the plaintiff. The plaintiff argues that a genuine issue of fact remains with regard to whether the moving defendants paid what was due to Carp in order to satisfy the plaintiffs invoices, thereby creating an implied contract, and whether Carp was acting as the agent of the moving defendants.
At the heart of this issue is the joint payment agreement entered into between Carp, Triple L and the plaintiff. It clearly states that Carp is CT Page 4064 the contractor, Triple L is the subcontractor, and the plaintiff is the supplier. (Second Substituted Complaint, Exhibit B, Joint Payment Agreement [Agreement].) It also states that "Contractor and subcontractor represent they have good authority to execute this Agreement on behalf oftheir respective principals and further request that Supplier may rely upon this Agreement in extending credit to Subcontractor." (Agreement, ¶ C.) This agreement, however, never names the moving defendants. The plaintiff argues that the conduct of the moving defendants created an implied contract between itself and the general contractor. The plaintiff argues that by knowing that the invoices submitted by Carp for payment were from the plaintiff, and by paying Carp for those invoices, the moving defendants created an implied contract. It argues that an implied contract may arise when the parties by their acts or conduct seek to insure the payment of the obligations due those entities dealing with the subcontractor. Brookside Construction Co. v. F.D. Rich Co.,18 Conn. Sup. 303, 306, ___ A.2d ___ (1953). The plaintiff, however, has taken this proposition out of context. Brookside Construction dealt with the issue of notice as a condition precedent to bringing a claim under the Miller Act, stating that "there is no lessening of the necessity for a notice as a condition precedent except when the parties by their acts and conduct enter into an express or implied contract to insure the payment of the obligations due. . . ." Id. In the present case, the plaintiff did enter into an agreement with Carp and Triple L to ensure payment. This does not, however, implicate the moving defendants.
"The rules governing contract formation are well settled. To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . . If the minds of the parties have not truly met, no enforceable contract exists." (Internal quotation marks omitted.) Geary v. Wentworth Laboratories. Inc., 60 Conn. App. 622,627, 760 A.2d 969 (2000). The plaintiff has submitted no evidence sufficient to raise a genuine issue of fact as to whether the basic elements of contract formation were met with regard to the moving defendants and the plaintiff. The moving defendants' evidence and the joint payment agreement itself are sufficient to establish that they were not. Furthermore, if the joint payment agreement is not enough to create a direct contractual relationship between the plaintiff and Carp, the subcontractor; U.S. for the Use and Benefit of Metal Mfg., Inc. v.Federal Ins. Co., supra, 656 F. Sup. 1197; then it stands to reason that the moving defendants, who are not even parties to the contract, are not contractually liable to the plaintiff either.
The plaintiff further alleges that at all times the subcontractor, CT Page 4065 Carp, was acting as an agent for the moving defendants. (Second Substituted Complaint, Count One, ¶ 8.) In U.S. for the Use andBenefit of Metal Mfg., Inc. v. Federal Ins. Co., supra, 656 F. Sup. 1194, the joint check agreement had been signed by the subcontractor, Mountain States, on behalf of "McCarthy — Western Mountain States Mech. Inc.," and the plaintiff argued that it was enough to show that the representative from Mountain States was acting as an agent for the general contractor, McCarthy, when he signed the agreement. Id., 1199. The court found that the joint payment agreement was "not sufficient to create a genuine issue of fact which would preclude summary judgment on behalf of the defendants as to this issue." (Emphasis added.) Id.[3] In the present case, Carp did not use the names of the general contractor at all. In fact, Carp is defined as the contractor in the agreement. The plaintiff has submitted no evidence sufficient to create an issue of fact with regard to the claim for breach of contract against Schiavi and Vanguard. Therefore, defendants' motion for summary judgment as to count one is granted.
 C Count Five
Count five alleges unjust enrichment on behalf of Schiavi, Vanguard, Carp and Triple L. Schiavi and Vanguard have again moved for summary judgment. "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) Paulsen v. Kronberg, 66 Conn. App. 876, 878, 786 A.2d 453
(2001). The moving defendants submitted evidence that they contracted with Carp, the subcontractor. It is undisputed that it was Carp who had the contract with Triple L, and Triple L who contracted with the plaintiff. Furthermore, the moving defendants have submitted evidence which shows that Carp submitted the plaintiff's invoices to the moving defendants and they proceeded to pay Carp what was due per their contractual arrangement. The plaintiff has not submitted any evidence sufficient to establish a genuine issue of fact with regard to its claim for unjust enrichment as to Schiavi and Vanguard.
Accordingly, there remains no genuine issue of fact that would preclude summary judgment on behalf of Schiavi, Vanguard and Fidelity as to counts one through five. Therefore, said defendants' motion is granted as to all counts.
BY THE COURT
______________ Skolnick, J. CT Page 4066