[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding was instituted as a foreclosure of a mechanic's lien arising out of a contract entered into between the parties whereby the defendant was to box in the driveway with materials, stump the lot, dig the foundation, install footing drains and backfill said drains as well as to install and backfill a septic system.[1] The total price for this work was twenty thousand five hundred six dollars and five cents ($20,506.05), to which extras were added in the amount of three thousand two hundred eleven dollars and fifty-six cents ($3211.56), for a claimed total due of twenty-three thousand seven hundred seventeen dollars and sixty-one cents ($23,717.61). The extras present an interesting question. There was a provision in the agreement requiring that any extra cost would be executed only upon written orders.[2] This particular issue should be resolved in favor of the plaintiff. The defendant Ross is also a contractor and has built several homes. The evidence clearly establishes that he knew that these charges were extras and that he agreed to them albeit not in writing. To deny payment therefor under these circumstances would elevate form over substance and would permit the law to be used as a sword rather than a shield.
Not long after the plaintiff began the services for which he was obligated under the terms of the agreement, the relationship between the parties began to deteriorate. That deterioration soon was converted from a professional relationship to personal antagonism. One of the biggest problems involved in this project was that the defendant directed the plaintiff to dig an electrical trench down the center of the driveway against the plaintiffs recommendations that it be located on either side of the proposed driveway. At Ross' insistence, DiTullio did, in fact, dig the trench down the approximate center of the driveway and installed stabilization fabric in an attempt to minimize the effect of the electrical trench undermining the driveway.
DiTullio began this project on or about November 24, 1999, and stopped working and moved his equipment from the premises on or about December CT Page 13567 11, 1999, as a result of the utter deterioration of his relationship with Ross. It is the plaintiffs claim that Ross precluded him from carrying out the balance of the contract because of his attitude, his directions, some of which defied appropriate construction practices, and his severe criticism of him. Ross, on the other hand, claims that the work that DiTullio was doing was inferior, that he refused to follow directions and that he refused to follow the contract. Once again, the court is satisfied that DiTullio was justified in leaving the premises and decides this issue in favor of the plaintiff as the result of very persuasive testimony by one subcontractor, a Mr. Perley, who described several incidents between the parties which convinced the court the plaintiffs version was correct. In addition to the aforesaid tension that increased dramatically between the parties as the project continued, a clear inference was raised which the court chose to accept. That inference is that Ross interfered with and directed actions which the plaintiff recognized as serious errors which would doom much of the work performed by him. This equates to impossibility of performance in that a direction to do something clearly wrong in the eyes of the contractor does indeed permit the court to find and strengthen the inference of impossibility.
When the plaintiff left the premises, he had not completed the installation of the footing drains, had not stumped the lot, and had not backfilled the foundation. These complaints must be recognized as secondary, with the primary problem existing with the driveway and the so-called corrective work necessary to accomplish the finished product.
During the course of the trial, there was no evidence whatsoever of any problem with the septic system installed under the direction of the prime contractor, with the exception of a claim that the location of one corner was at variance with the plans. This objection was quickly overcome, and no further problem with that particular aspect of the project was presented.
There is no doubt, however, that the defendant is entitled to a credit for incomplete work and the failure of the plaintiff to provide the necessary materials were he to complete that work. That credit consists of six items: one hundred fifty ($150) dollars for three hundred (300) feet of perforated pipe at fifty (50) cents per foot; twenty-five ($25) dollars for approximately ten to twelve (10-12) couplings to connect the pipe around the foundation corners; fifty-three ($53) dollars for three hundred (300) feet of three (3) foot filter fabric to place over the pipe; four hundred ($400) dollars for one (1) load of stone to place over the pipe; eighty ($80) dollars for two (2) hours of manual labor at forty ($40) dollars per hour to install the pipe; two hundred twenty ($220) dollars for two (2) hours at one hundred ten ($110) dollars per hour to CT Page 13568 backfill the foundation. These figures aggregate the sum of nine hundred twenty-eight ($928) dollars with a tax of six (6) percent which equals fifty-five dollars and sixty-eight cents ($55.68), for a total of nine hundred eighty-three dollars and sixty-eight cents ($983.68). The court chooses to round off that credit at one thousand ($1000) dollars.
After the plaintiff left the site, the plaintiff retained the services of one Robert Cioffoletti, a contractor whose business includes Earthmoving Construction.[3] The plaintiff seeks credit for the work performed by Cioffoletti in what he considers corrective services and/or services necessary to complete the project. The court is unable, to find that he did not remove and reinstall three hundred (300) yards of bankrun gravel at sixteen ($16) dollars per yard which is chargeable to the plaintiff Cioffoletti's testimony on cross-examination indicated that he removed some of the gravel provided by the plaintiff. The plaintiff s rebuttal, however, was that any extra bankrun gravel that was installed, provided and spread by Cioffoletti was done to raise the level of the existing driveway and not to replace the materials delivered by the plaintiff Defendant's Exhibit 14 indicates a circled area listed as the tracking pad. That pad slants downward toward the driveway. The Defendant's Exhibit 22, however, displays the driveway level with the roadway, supporting the plaintiffs position that new materials were placed on the driveway to avoid the conditions complained about. The Defendant's Exhibit 21 clearly shows the finished driveway as being higher than the surrounding area.
It was Cioffoletti's testimony that the material that was removed was spread around the lot and used for fill. The project did not require a great amount of fill and topsoil to finish the project. If Ross did not use the material that was supplied to him by the plaintiff, he would have to go out in the open market and purchase an amount equal thereto. There is a substantial variance in the testimony with respect to the charge per yard for bankrun gravel. That variance precludes the court from being able to make a finding since each of the witnesses was quite persuasive and neither effectively rebutted the other's position.
Cioffoletti testified that some of the driveway materials had to be removed because of "fines" which apparently are a sandy material that worked its way to the surface and then turned to mud. The material which Cioffoletti claims that he used was delivered by another contractor after the plaintiff left but before Cioffoletti commenced work on the driveway. Again, the plaintiff makes a strong case by asserting that it is impossible to determine whether or not the material he furnished or the material furnished by the subsequent provider was the source of these "fines." CT Page 13569
Cioffoletti charged one thousand eight hundred ($1800) dollars for the installation of the footing drains and an additional day to backfill the foundation, for a total amount of two thousand eight hundred ($2800) dollars. The plaintiff has been awarded a credit of nine hundred eighty-three dollars and sixty-eight cents ($983.68) (rounded off to one thousand ($1000) dollars) in disputes, the amount necessary as alleged to complete the job. He claims that the amount of time asserted to dig the foundation as opposed to backfilling it is exorbitant. He also asserts that the remaining part for labor and material and topsoil, which was not part of the original contract, should not be awarded to the defendant. The court does find that the amount charged by Cioffoletti, while quite expensive, does not fall within the term "exorbitant." The court chooses to accept that Cioffoletti testimony on this particular issue and credits the defendant with an additional two thousand eight hundred ($2800) dollars.
The plaintiff in his brief comments that the defendant had many pictures of the project but did not produce any pictures showing the removal of the bankrun gravel by Cioffoletti nor any work in progress by him on the driveway. He raises the question that while there were many other pictures of Cioffoletti's work, why were there no pictures introduced with respect to the allegations of correcting and completing the driveway?
The plaintiff also claims interest due and payable to him for what he claims to be the wrongful retention of money for the period of two years and nine and one-half months from January 1, 2000. He cites BlakesleeArpaia Chapman, Inc. v. EI Constructors, Inc., 239 Conn. 708 (1997) for this proposition. The plaintiff continues by claiming an award of counsel fees under Sec. 52-249 of the General Statutes which provides certain remedies in proceeding to foreclose mechanic's liens. He cites to A.Secondino and Son, Inc. v. LoRicco, 19 Conn. App. 8, 15-16 (1989). He also reminds the court, relying on Original Grasso Construction Co. v.Shepard, 70 Conn. App. 404 (2002), that awarding counsel fees in these types of litigation is a question of law for the court to decide. With respect to an award of counsel fees, the plaintiff has submitted an affidavit setting forth that he spent forty-three point two (43.2) hours on this case at a rate of two hundred ($200) dollars per hour. The court reduces the hourly rate from two hundred ($200) dollars per hour to one hundred fifty ($150) dollars per hour and awards a fee of six thousand eight hundred forty ($6840) dollars.
In accordance with the foregoing, the court finds the issues concerning the debt for the plaintiff and further finds that an order may enter CT Page 13570 finding that debt in the amount of twenty-three thousand seven hundred seventeen dollars and five cents ($23,717.05), which is the aggregate of the contract price and the extra services and materials provided. Against this amount, the defendant is entitled to credits of five thousand ($5000) dollars paid previously, two thousand eight hundred ($2800) dollars for work performed by Cioffoletti, and one thousand ($1000) dollars credit from the plaintiff, which credits amount to eight thousand eight hundred ($8800) dollars, becoming a balance due and payable in the amount of fourteen thousand nine hundred seventeen dollars and five cents ($14,917.05), together with counsel fees in the amount of six thousand four hundred eighty ($6480) dollars which the court finds to be fair and reasonable and so awards.
Counsel is ordered to claim the matter for judgment unless the parties are about to reach a satisfactory settlement.
Moraghan, J.T.R.